# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

RARE BREED TRIGGERS, LLC et al.,

    Plaintiffs,

v.                                                              CASE NO. 1:21cv149-RH-GRJ

BIG DADDY ENTERPRISES, INC. et al.,

    Defendants.

_____/

## PRELIMINARY INJUNCTION

This is a patent infringement case. The plaintiffs have moved for a preliminary injunction. By agreement of both sides, the motion has been submitted on the briefs, oral argument, and written record, which includes declarations, deposition testimony, and exhibits. This order grants the motion. Statements of law and fact in this order are based on the current record and will not control the ultimate decision on the merits.

I

The plaintiff ABC IP LLC owns U.S. Patent No. 10,514,223 ("the '223 patent"). The plaintiff Rare Breed Triggers, LLC holds the exclusive right to sell

products covered by the patent. The patent covers a forced reset trigger—a device that increases the rate at which a firearm can be fired. Rare Breed sells a trigger it calls the FRT-15. The product is covered by the patent and intended for installation into AR-15 pattern firearms.

The Bureau of Alcohol, Tobacco, Firearms and Explosives has issued a cease-and-desist notice to Rare Breed asserting the FRT-15 meets the statutory definition of a machinegun because it is a part that, when installed, converts a firearm into a machinegun. That is an issue for another day.

Until recently, the FRT-15 was the only product on the market that operates in this way—the only product covered by this patent. Now, though, the defendant Wide Open Enterprises, LLC manufactures and sells the "Wide Open" trigger—a device that was plainly copied from the FRT-15. That of course is not the test of patent infringement, but here the defendants are plainly infringing the patent.

The defendant Big Daddy Enterprises, Inc. is a distributor of the Wide Open trigger. It previously distributed Rare Breed's FRT-15.

II

In determining whether to grant a preliminary injunction, a district court properly considers four factors: (1) the likelihood of success on the merits; (2) the likelihood of irreparable harm; (3) the balance of hardships; and (4) the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Titan*

*Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009). Generally, a preliminary injunction will not be granted unless the movant establishes both a likelihood of success on the merits and irreparable harm. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

III

Determining likelihood of success on the merits starts with the issue of infringement. That issue requires a two-step analysis: first, claim construction; and second, determination of whether a claim reads on the accused product. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). To show likelihood of success, a plaintiff also must address any claim of invalidity. This order addresses each of these issues in turn.

A

Claim construction is question of law. "When interpreting claims, [the court] inquire[s] into how a person of ordinary skill in the art would have understood claim terms at the time of the invention." *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1372-73 (Fed. Cir. 2005) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). The court should first consider the intrinsic record: the claims, the specification, and the prosecution history, if it is in

evidence. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Id*. "[W]ords in a claim are generally given their ordinary and customary meaning . . . ." *Id*.

Here the plaintiffs rely on the '223 patent's claim 4:

> For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising:
>
> a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins;
>
> a hammer having a sear notch and mounted in the housing to pivot on a transverse axis between set and released positions;
>
> a trigger member having a sear and mounted in the housing to pivot on a transverse axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, the contact causing the trigger member to be forced to the set position;
>
> a locking bar pivotally mounted in the housing and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position in which the trigger member can be moved by an external force to the released position.

A person of ordinary skill in the art would have no difficulty understanding these terms, especially in tandem with the specification. The defendants have identified only one phrase allegedly in need of significant construction: the third paragraph's concluding phrase, "the contact causing the trigger member to be forced to the set position." The defendants say this means that the hammer's contact with the trigger member must be the *sole* cause of the trigger's movement to the set position—that another item, for example, a spring, cannot also contribute to the movement.

That is not what the claim says, and it is not what the claim means. It is sufficient if the hammer contacts the trigger member and this is a cause, not the only cause, of the trigger's movement to the set position. Indeed, the specification says a return spring "may be unnecessary"—language suggesting a spring might be used but might not be necessary and thus might not be used. Either way, the claim applies.

B

As so construed, claim 4 plainly reads on both Rare Breed's FRT-15 and on the defendants' accused product. The defendants say their product is noninfringing because it includes a trigger-return spring and the hammer's contact with the trigger member, without an assist from the spring, would not work. The spring, the

defendants say, is essential. But the record does not establish that the spring is essential, and it would not matter anyway.

The Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005). "[A]lthough the specification often describes very specific embodiments of the invention," the court has "repeatedly warned against confining the claims to those embodiments." *Id*. "That is not just because section 112 of the Patent Act requires that the claims themselves set forth the limits of the patent grant, but also because persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments." *Id*. A claim should not be so limited "unless the patentee has demonstrated a clear intention to limit the claim scope 'using words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002).

When a claim reads on a product, an infringer cannot manufacture the product in a manner that requires an otherwise-nonessential addition and assert this somehow makes the product noninfringing. The defendants' product infringes the '223 patent.

## C

The parties' burdens on the issue of validity at this stage are "tailored to fit the preliminary injunction context." *Titan Tire*, 566 F.3d at 1377. As at trial, the patent enjoys a presumption of validity. *Id.* But "[i]nstead of the alleged infringer having to persuade the trial court that the patent is invalid, at this stage it is the patentee, the movant, who must persuade the court that, despite the challenge presented to validity, the patentee nevertheless is likely to succeed at trial on the validity issue." *Id.* The court must weigh the evidence of invalidity with the "rebuttal evidence presented by the patentee and determine[] whether the patentee can show that the invalidity defense 'lacks substantial merit.'" *Id*. at 1378. If, after considering all the evidence, the court determines that the alleged infringer has raised a substantial question as to validity that the patentee cannot show lacks substantial merit, the likelihood of success factor has not been established. *See id*. at 1377-1380.

The defendants raise two validity arguments under 35 U.S.C. § 112, which provides that a patent specification must:

> contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

First, the defendants say claim 4 is indefinite because, as broadly interpreted by the plaintiffs, it "encompasses all trigger devices where the hammer acts on the trigger, no matter how little or how much, or whether alone or in conjunction with other components. Such claim lacks support in the specification." ECF No. 36 at 31.

Second, the defendants say claim 4 is not supported by an enabling disclosure—a disclosure that would enable a person of ordinary skill in the art to make the claimed product—because claim 4 is so broad that it covers products not adequately described.

Both of these assertions are closely related to the defendants' disagreement with the claim construction set out above. The absence of any reference to a spring—other than the specification's statement that a spring may be unnecessary—does not render claim 4 boundless or indecipherable. A person of ordinary skill in the art would have no difficulty understanding the claim or making the claimed product. The defendants have not raised a substantial question as to validity.

IV

Infringement without more does not establish irreparable harm. Here, though, the plaintiffs have shown they will suffer irreparable harm if the defendants continue their infringement.

This is a new product—the FRT-15 was launched in December 2020—in a hot, niche market. There are only two products of this specific kind—the FRT-15 and the defendants' infringing Wide Open trigger. Rare Breed, as the holder of the exclusive right to sell products covered by the '223 patent, is entitled to proceed without direct competition. The difference between operating as the exclusive seller of a product and being one of two sellers is substantial. Without a preliminary injunction, Rare Breed will lose its exclusive right during the early days of this hot, niche market.

To be sure, there are other products designed to increase the firing rate for AR-15 rifles and other firearms. The record includes little rigorous analysis of the market for such devices. But the FRT-15 and Wide Open trigger are high-end devices marketed to firearm enthusiasts. One might well doubt that a consumer interested in a device of this kind would settle for a different technology. These are the two competitors within this niche, even though there are other products that might well be part of the broader, rapid-fire market.

The defendants assert, in effect, that the market for this product is unlimited—that Wide Open sales will have no effect on sales of the FRT-15. But the record includes contrary evidence—it has taken Rare Breed longer to sell out of its daily allotments—and the defendants' assertion defies common sense. The market for machineguns, or for devices approximating machineguns, is not

unlimited. And more broadly, markets for hot new products often run their course in short order. Not every product is an iPhone.

Rare Breed says it has made the deliberate choice to limit its sales, hoping to maintain the product's perceived scarcity and, with it, the product's high price. One might well question whether this is a sound business strategy—some might say Rare Breed should make hay while the sun shines—but nothing in the record contradicts Rare Breed's statement that this is indeed its strategy. If the defendants are allowed to flood the market, it will destroy, or at least irreparably damage, Rare Breed's strategy.

Finally, it cannot be said that the harm Rare Breed will suffer from continued infringement will necessarily be remediable by an award of damages. The defendant Wide Open Enterprises, LLC was formed solely to sell the Wide Open trigger; if ultimately held liable, it need only turn out the lights, lock the door, and walk away. A money judgment might well be uncollectible. The other defendant, Big Daddy Enterprises, Inc., is an ongoing business not limited to a single product, but its ability to respond to a substantial judgment may be unclear. More importantly, Big Daddy is a distributor who participates in only some, not all, of the infringing sales, so a damages award against Big Daddy might not make Rare Breed whole.

In sum, the plaintiffs will suffer irreparable harm if a preliminary injunction does not issue.

V

The balance of hardships is a draw. The tie goes to the side that is correct on the merits—here, the plaintiffs. *See Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990) ("Because the court must balance the hardships, at least in part in light of its estimate of what is likely to happen at trial, it must consider the movant's showing of likelihood of success.").

If a preliminary injunction is not issued, the plaintiffs will suffer irreparable harm, as set out above. If a preliminary injunction is issued, the harm to the plaintiffs will be avoided. If this order is correct that the plaintiffs are likely to prevail on the merits, the defendants will suffer no harm from a preliminary injunction, because they have no valid interest in infringing the patent.

If, on the other hand, a preliminary injunction issues and the defendants ultimately prevail on the merits, they will have suffered substantial harm from a preliminary injunction. But the harm will be substantially mitigated, if not entirely cured, by the damages they will be entitled to recover as the result of being wrongly enjoined. There will be little if any risk that damages will be uncollectible, because the plaintiffs will be required to post adequate security. This order sets the

Case No. 1:21cv149-RH-GRJ

amount of security at an appropriate level based on this record—and either side may move to adjust the amount and submit additional evidence.

The harm to the defendants is mitigated, too, by their entry into this field with full knowledge of the '223 patent and the risk of an injunction. One who touches the stove ought not complain of getting burned.

## VI

Finally, the public-interest analysis is similar. Each side has asserted the public interest cuts in its favor only because it is right on the merits. This order holds the plaintiffs are likely to prevail on the merits. The public interest is served by enforcing the law—in this case, by protecting a valid patent against infringement.

The Bureau of Alcohol, Tobacco, Firearms and Explosives' cease-and-desist notice is not an important part of the analysis. To the extent it cuts either way, it cuts in favor of the preliminary injunction. If indeed the FRT-15 is being sold illegally by Rare Breed, then the Wide Open trigger is being sold illegally by the defendants. On that view, the preliminary injunction will reduce illegal sales—a result consistent with the public interest. And regardless of the legality, neither side has argued it serves the public interest to put more devices of this kind on the street.

## VII

For these reasons,

IT IS ORDERED:

1. The motion for a preliminary injunction, ECF No. 10, is granted.

2. A preliminary injunction is entered as follows: The defendants must not manufacture, market, sell, offer to sell, import, or transfer possession of any Wide Open trigger or substantially similar device.

3. The preliminary injunction will take effect upon the court's approval of security posted with the clerk of court in the amount of Two Million Dollars ($2,000,000) for costs and damages sustained by a defendant found to have been wrongfully enjoined.

4. This preliminary injunction binds the defendants and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this preliminary injunction by personal service or otherwise.

SO ORDERED on December 30, 2021.

                                  s/Robert L. Hinkle
                                  United States District Judge