## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**RARE BREED TRIGGERS, et al.**
**Plaintiffs.**                                    CASE NO. 1:21-CV-00149-RH-HTC

   -vs-

**BIG DADDY ENTERPRISES, et al.**
**Defendants.**

---

## DEFENDANTS' MOTION TO COMPEL UNREDACTED DOCUMENTS

Big Daddy Enterprises, Inc., ("BDE"), Big Daddy Unlimited, Inc. ("BDU"),

BlackStock, Inc., Wide Open Enterprises, LLC d/b/a Wide Open Triggers ("WOT"),

We Got Ammo, Inc. ("WGA"), Anthony McKnight, Sherrie McKnight**,** and Douglas

Enrique Rios (together, "Defendants") hereby file this Motion to compel unredacted

documents pursuant to Rule 37 of the Federal Rules of Civil Procedure and

applicable case law.

While Defendants are cognizant of the requirements of L.R. 26.1 (D), they are

not pertinent to the issues raised in the main portion of this motion.  Here, Plaintiffs

have produced documents in response to requests for production, but they redacted

the documents.  Thus, the language of the requests and objections are not the issue,

but rather whether Plaintiff may redact documents on the basis of relevance and for social media purposes, as well as, should the Court find redacting documents appropriate, whether the information redacted is in fact irrelevant to any issue in the case. Defendants did include the requests and objections as exhibits, should the Court find that a review of those documents is needed. An alternative argument is included in which the language of the requests is set forth in the motion.

On February 4, 2022, Defendants served Requests for Production ("RFP's") on Plaintiffs, Rare Breed and ABC IP. After Tony McKnight, Sherrie McKnight, Doug Rios, and We Got Ammo were added as defendants, a second set of RFP's were sent to Plaintiffs on July 21, 2022. For reasons not fully understood by the undersigned, neither side began producing documents until August 2022.[1]

Rule 26(b)(1) allows parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The rule also provides that information within this scope of discovery "need not be admissible in evidence to be discoverable." Evidence is relevant if: (a) it has any tendency to make a fact more or less probably than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Relevant nonprivileged information need not be produced if the court finds that the

---

[1] Both sides had served documents as exhibits to motions or patent rule disclosures, but none had produced in response to RFP's until early August 2022.

burden or expense of its production outweighs its likely benefit to the resolution of the case on its merits. Fed. R. Civ. P. 26(b)(2)(C).  Plaintiffs have not argued that the production of the redacted sections complete with customer information is a burdensome or expensive endeavor nor have they otherwise provided a counterweight to the relevance of the information sufficient for withholding it. Plaintiffs contend (without explanation) that the information is irrelevant and its release could be a social media embarrassment.  At a minimum, this information is useful for: (1) the identification of witnesses that can provide information regarding noninfringing alternatives to the FRT-15; (2) determining whether Rarebreed could meet consumer demand so as to satisfy its claim for lost profits; and (3) providing information relevant to the parties' assessment of Plaintiffs' potential recovery for purposes of evaluating a potential settlement.

In Plaintiffs' production, they redacted the names and contact information of people they claim to be customers who purchased an FRT-15 trigger from them. Plaintiffs' redactions are not alleged to be subject to any privilege.  The sole explanation initially provided was that it would be harmful to their business to disclose its customers.  Obviously, this is not a valid objection.  Later, Plainitffs further alleged that he information was irrelevant, but failed to address the obvious ways in which the information is related to issues in the case.  For reasons explained

below, Defendants believe that Plaintiffs merely wish to have the Court order the production of the information, so they may use that to save face on social media.

The customers' information is relevant to issues in the case.  For example, customers may be interested in discussing a license to Rounds '223 the terms of which would be highly relevant to the issues in the case.  Also, in seeking lost profits, Plaintiffs are required to prove they had the capacity to meet the demand that would have placed upon them.  Upon information and belief, Defendants do not believe that Plaintiffs were able to keep up with their own demand, much less the demand that would have been added if Plaintiffs had to supply Defendant customers. Contacting Plaintiffs customers would provide evidence of extremely long wait times and customers that never received product.

In *Gargoyles, Inc. v. U.S.*, the Federal Circuit addressed the issue of lost profits in a patent infringement lawsuit.  *Gargoyles, Inc. v. U.S.,* 113 F.3d 1572, 1575 (Fed. Cir. 1997).  There, the panel noted that the four factors outlined in *Panduit* are instructive in determining whether to award lost profits in a patent infringement case; namely, the patent owner must prove: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) manufacturing and marketing capability to exploit the demand, and (4) the amount of profit he would have made.  *Id*. at 69 (*citing Panduit Corp. v. Stahlin Bros. Fibre Works, Inc*., 575 F.2d 1152 (Sixth Cir. 1978)).  The Federal Circuit agreed with the Claims Court in

4

finding that Gargoyles could not have met consumer demand, an issue dispositive of the case.  As previously mentioned, Defendants herein doubt Plaintiffs' ability to meet consumer demand.  By redacting this information, Plaintiffs have concealed facts relevant to making this determination.

This Court may find *SmithKline Diagnostics* instructive.  *SmithKline Diagnostics, Inc. v. Helena Laboraties Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991).  There, SmithKline Diagnostics ("SKD") owned a patent for a specimen test slide and method for detecting occult blood in fecal matter.  SKD sought damages calculated on the basis of its lost profits.  In that case, a doctor involved in purchasing for a major clinic stated that he would consider two noninfringing alternatives to the SKD's test slide, testimony that was dispositive of the case.  Likewise, bulk purchasers of FRT-15 trigger devices may have pondered other noninfringing devices.  Dealers could also provide crucial information regarding manufacturing and production standards in the industry.  Customer testimony could be invaluable in comparing the functionality of the FRT-15 with that of other similarly functioning trigger mechanisms.

In seeking damages based upon a reasonable royalty, parties must account for non-infringing alternatives.  Speaking to Plaintiffs customers would serve to establish a basis for what they would have considered an acceptable non-infringing alternative.  Another factor to consider in establishing a royalty would be

improvements over the patented product that are not covered by the patent.  As publicly known, many of the customers had complaints about the FRT-15 which would not apply to the WOT.  *See e.g.,* Ex. 7 at RBT1328-1329, 2415, 2422–2429, 2433–2441.  Also, publicly voiced, customers had concerns with the legality of the triggers and were reassured by Rare Breed that they were legal.  *See e.g., id.* at RBT2409–2410.   Such customers likely would have been interested in legal, noninfringing alternatives.

## Supporting Memorandum

### A. Statement of Facts

1.  On February 4, 2022, Defendants served identical Requests for Production on Plaintiffs, Rare Breed and ABC IP.  Exs. 1 & 2.

2.  On March 4, 2022, Plaintiffs filed identical objections to the first set of RFP's which include "General Objections" and formulaic objections.  Exs. 3 & 4.  On August 9, 2022, Plaintiffs' filed supplemental objections to the first set of RFP's.  While Defendants question Plaintiffs' ability to lodge new objections to four-month-old request, the supplemental objections are included for completeness.  Exs. 11 & 12.

3.  On July 21, 2022, after new Defendants were added to this case, a second set of RFP's were sent to Plaintiffs.  Exs. 5 & 6.  Defendants have not served objections to the second set of RFP's, despite the lapse of 30 days.

4. On August 17, 2022, Plaintiffs produced a large number of documents containing redactions. *See e.g.*, Ex. 7.[2]

5. On August 18, 2022, Defendants asked why the documents were redacted. Ex. 8.

6. On August 24, 2022, after much back-and-forth, Plaintiffs reply that they "redacted information that specifically identifies a purchaser." Plaintiffs threaten to request information on Defendants' customers, should Defendants press the issue. Mr. Bellamy concludes, "I implore you to consult your client about the business consequences of such a move. I expect the reaction of industry consumers would be swift and harsh." Ex. 9.

7. On August 25, 2022, Plaintiffs state that "Rare Breed is not willing to divulge private customer identifying information," and claim that we stated no basis for needing it. Ex. 10.

8. On March 27, 2022, Rare Breed's president, Lawrence DeMonico, posted a video in which he claimed Rare Breed has a "digital shredding policy." https://www.youtube.com/watch?v=o9miePNJ21U&t=17s (beginning at minute 13). He explains that Rare Breed computer system magically and automatically destroys all electronic files when a customer's order is fulfilled.

---

[2] As Plaintiffs designated the bulk of its production as Outside Counsel Eyes Only, Defendants are simultaneously moving to file Exhibit 7 (which contains a sampling of redacted documents) under seal.

Upon information and belief, these misrepresentations by Rare Breed are driving its refusal to provide unredacted documents.

## B. Legal Standard

The burden to justify these unilateral redactions rests on the Plaintiffs. *McNabb v. City of Overland Park*, 2014 WL 1152958, at *4 (D. Kan. Mar. 21, 2014); *Orion Power Midwest, L.P. v. American Coal Sales Co.*, No. 2008 WL 4462301, at *2 (W.D. Pa. Sept. 30, 2008); *Beverage Distributors, Inc. v. Miller Brewing Co.*, 2010 WL 1727640, at *4 (S.D. Ohio Apr. 28, 2010). Rule 26(b)(1) allows parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The rule also provides that information within this scope of discovery "need not be admissible in evidence to be discoverable."

Redacting irrelevant or non-responsive information from documents is improper, absent some unusual need for protection (e.g., credit card or account numbers). "Redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request. It is a rare document that contains only relevant information. And irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information." *Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011) ); *Krausz Indus.,*

8

*Ltd. v. Romac Indus., Inc.*, 2011 U.S. Dist. LEXIS 159426, 2011 WL 13100750, at *3 (W.D. Wash. Aug. 10, 2011) ("The Court is persuaded by cases that hold that unilateral redactions on the basis of irrelevance or non-responsiveness are improper"); *see also In re Medeva Securities Litigation*, 1995 U.S. Dist. LEXIS 21895, 1995 WL 943468, at *3 (C.D. Cal. May 30, 1995) ("The Court does not welcome unilateral editing of documents by the producing party. Even when implemented with restraint and in good faith, the practice frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured. It also tends to make documents confusing or difficult to use.").

In fact, for policy reasons, federal courts have erred on the side of disclosure when addressing the propriety of unilateral redactions. *See McNabb v. City of Overland Park*, 2014 WL 1152958, at *3 (D. Kan. March 21, 2014). Permitting unilateral redaction would open the floodgates for new discovery battles. *Orion Power Midwest, L.P. v. American Coal Sales Co*., No. 2008 WL 4462301, at *2 (W.D. Pa. Sept. 30, 2008). In accordance with Federal Rule 34(b)(2)(E)(ii), a party must produce information "in a form or forms in which it is ordinarily maintained." *Id*; Fed. R. Civ. P. 34(b)(2)(E)(ii). As contented by the *Orion Power* court, a party that seeks to inspect a document would anticipate being able to inspect the entire document. *Id.* Plaintiffs have added unnecessary costs and delay to this litigation in taking it upon themselves to scrub all such documents. *Id.*

The practice of unilateral redaction is frowned upon by courts and permitted under a very limited set of circumstances  *Evon v. Law Offices of Sidney Mickell*, 2010 U.S. Dist. LEXIS 20666, 2010 WL 455476, at *4 n.1 (E.D. Cal. Feb. 3, 2010) ("[r]edaction is, after all, an alteration of potential evidence.  The Federal Rules sanction only very limited unilateral redaction, *see* Fed. R. Civ. P. 5.2.  Outside of these limited circumstances, a party should not take it upon ... itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case").  For example, redactions by governmental agencies in compliance with FOIA exemptions where said information included personal information (e.g., medical records or bank account information) wholly irrelevant to the any issue in the case.  *American Manufacturers Mutual Insurance Company v. Payton Lane Nursing Home, Inc.*, 2009 WL 10701187, at *9 (E.D.N.Y. Nov. 18, 2009).  Here, the Plaintiff do not deny that Rule 5.2 does not apply, nor do they allege highly personal information (e.g., account numbers) is being protected.  Rather they argue the customer information is irrelevant and that disclosing it would be harmful to their business due to social media concerns.

## C. Argument

Defendants served two sets of identical sets of RFP's on Plaintiffs, Rare Breed and ABC IP.  SOF 1, 3.  Plaintiffs objected to the first set of RFP's, it did not lodge objections pertaining to the second set.  SOF 2.  (Thus, as argued below, Plaintiffs

objections on relevance should not even be considered with respect to the second set of RFP's.)  In response to both sets of RFP's, Plaintiffs produced documents, but redacted customer information from them.  SOF 4.

### 1.  Plaintiffs' redactions for relevance were improper

Unilateral redactions based on one party's subjective view of relevancy are generally improper.  *Bonnell v. Carnival Corporation*, 2014 U.S. Dist. LEXIS 22459, 2014 WL 10979823, at *4 (S.D. Fla. Jan. 31, 2014) ("defendant may not unilaterally redact portions of otherwise discoverable, non-privileged documents based on its own belief that portions of the documents are irrelevant to the claims in this case"); *Toyo Tires & Rubber Co., Ltd v. CIA Wheel Group*, 2016 U.S. Dist. LEXIS 184189, 2016 WL 6246384, at *2 (C.D. Cal. Feb. 23, 2016) (producing party may not redact otherwise responsive documents because those documents contain irrelevant material); *Melchior v. Hilite International*, Inc. 2013 U.S. Dist. LEXIS 71393, 2013 WL 2238754, at *3 (E.D. Mich. May 21, 2013) (subpoenaed nonparty "cannot unilaterally redact portions of documents based on relevancy grounds).  Plaintiff has not alleged, nor can it prove, that any special exception applies.  It's only legally-based objection is relevance.  SOF 5–7.

"Indeed, the language of Rule 34 discusses production of 'documents,' rather than paragraphs or sentences.  [There is] no compelling reason [to permit Defendant to withhold information it thinks is] not relevant or responsive where that

information appears in a document that contains otherwise relevant or responsive information." *ArcelorMittal Cleveland Inc. v. Jewell Coke Co., L.P*., 2010 U.S. Dist. LEXIS 133263, 2010 WL 5230862, at *3 (N.D. Ohio Dec. 16, 2010) ("The Court is not persuaded that [Defendant] is entitled to redact information in its document production that it believes is irrelevant or non-responsive to [Plaintiff's] document request."); *Orion Power Midwest, L.P. v. American Coal Sales Co*., 2008 U.S. Dist. LEXIS 76366, 2008 WL 4462301, at *1-2 (W.D. Pa. Sept. 30, 2008) ("redaction of documents is disfavored and is appropriate only in limited circumstances"...and finding no express or implied support in the Federal Rules of Civil Procedure by "which a party would scrub responsive documents of non-responsive information.").

While Defendants do not have the burden of establishing relevance, it has nonetheless done so. Plaintiffs have not and cannot deny the customer information is relevant to licensing terms of the patent-in-suit, lack of manufacturing capacity and unmet demand, existence of noninfringing alternatives that the customers would find acceptable, and problems with the FRT-15 triggers which goes to value of a license to name a few.

Plaintiffs' half-hearted claim that the information is irrelevant is simply a ploy to have this Court order the disclosure of customer information, so that it can attempt to save face on social media. Plaintiffs could have sought a protective order if the information were truly irrelevant and highly sensitive. In responding to Defendants'

request for production, Plaintiffs' lodged numerous general and formulaic objections on grounds of confidentiality, in flagrant violation of LPR 26.1(c). SOF 2. Plaintiffs even lodged a second set of "supplemental" objections four months later. *Id.* Yet, Plaintiffs do not rely upon any of those objections and have produced responsive documents. By providing responsive documents, Plaintiffs have implicitly admitted that the information contained therein is discoverable. *See Berney v. Apple Inc.*, 2021 U.S. Dist. LEXIS 250174, at *7 (D. Conn. May 27, 2021) (relevance of redacted information was established once defendant produced the documents in response to discovery protocols).

Indeed, Plaintiffs must have known they would have to produce customer information in this case. Based upon Mr. Bellamy's statement and threat to request disclosure of Defendants' customers (SOF 6), Defendants believe that the motive for Plaintiffs' refusal is it wants the Court to order the production. This allows them to attempt to avoid the "swift and harsh" "reaction of industry consumers" of which Mr. Bellamy warned Defendants.

Rare Breed's president, Lawrence DeMonico has reassured customers on social media that their identity would be protected from the ATF by Rare Breed's "digital shredding policy." SOF 8. Mr. DeMonico alleges that Rare Breed's system automatically destroys all electronic customer information, once the customer's order is fulfilled. *Id.* Setting aside Mr. DeMonico's fantastic claim and assuming

13

Rare Breed possess software which carries out a "digital shredding policy,"[3] they would have to disable it once they were in reasonable apprehension of suit. *Hohider v. United States Parcel Service, Inc*., 257 F.R.D. 80 (W.D.Penn. 2009) (holding "a duty to preserve is an affirmative obligation arising when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probably and the party seeking the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded"); *Winters v. Textron, Inc.,* 187 F.R.D. 518, 520 (M.D.Pa.1999) (finding that knowledge of even a potential claim is sufficient to impose a duty to preserve evidence); *Bowman v. American Medical Systems, Inc.,* No. 96–7871, 1998 WL 721079, at *3 (E.D.Pa. Oct. 9, 1998) ("A party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence"); *Barsoum v. NYC Housing Authority,* 202 F.R.D. 396, 400 (S.D.N.Y.2001) (citing *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir.1998) ("A party has a duty to retain evidence that it knows or reasonably should know may be relevant to pending or future litigation.")).  Indeed, one might argue that Plaintiffs' purpose in implementing such

---

[3] Erasing electronic files which traverse the internet would be no small feat, as numerous servers are involved which retain copies of data that pass through them. Even assuming Rare Breed has its own server, which is unlikely, it has no access or control over all of the other servers involved in handling emails and orders.  In addition, much of this information is backed up for redundancy in servers that Rare Breed does not have control over.

a program was precisely to destroy evidence that might be used in their suit with the ATF. At a minimum, the destruction of any such evidence is highly prejudicial in the case at bar. The extent to which destruction occurred and the veracity of Mr. DeMonico's claims remain to be discovered.

However, we know with certainty that customer information does exist, as it was redacted from Plaintiffs' production. As it was improper for Plaintiffs to unilaterally redact this relevant information, the Court should order them to produce the documents in unredacted form.

### 2. Should the Court find redacting for relevance is justified, it should not apply to the second set of RFP's

Many of the documents produced fail within scope of RFP's 121–126, and Plaintiffs did not object to those RFP's on any basis including relevance. SOF 3. These requests are as follows:

> 121. All documents concerning customer or distributor requests, preference, or requirements relating to the FRT-15.

> 122. All documents concerning Your ability or inability to satisfy orders for forced reset triggers or trigger devices, including the FRT-15.

> 123. All documents concerning Your marketing capacity for forced reset triggers or trigger devices, including the FRT-15.

> 124. All documents concerning Your capacity to manufacture forced reset triggers or trigger devices, including the FRT-15.

125. All documents concerning any returns by customers or distributors of any forced reset triggers or trigger devices, including the FRT-15.

126. All documents concerning any warranty repairs or any requests for warranty repairs from customers or distributors of any forced reset triggers or trigger devices, including the FRT-15.

Pursuant to Rule 34, Plaintiffs must respond to Defendants' Request for Production in writing within 30 days of being served. F ed. R. Civ. P. 34(2)(A). The responding party must state with specificity the grounds for objecting to the request within the aforementioned timeframe. Fed. R. Civ. P. 34(b)(2)(B). Most importantly, an objection to part of a request must specify "the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). When a party fails to timely object to production requests, the objections are deemed waived. *Pitts v.* Francis, No. 5:07cv169/RS/EMT, 2008 U.S. Dist. LEXIS 41894, 2008 WL 2229524, at *2 (N.D. Fla. May 28, 2008); *Hmied v. Timpano Acquisition, LLC*, 2014 U.S. Dist. LEXIS 191962, at *3-4 (M.D. Fla. Apr. 3, 2014); *Wyanmoor Comm. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, (S.D. Fla. 2012). RareBreed and ABC have wholly failed to object to RFP's 121–126 and, therefore, have not stated with specificity any ground of objecting to these requests pursuant to Rule 34. Plaintiffs have already produced numerous documents demonstrating their inability to satisfy order for forced reset triggers and their capacity for making said triggers. Plaintiffs have moreover produced redacted versions of documents relating to distributor

16

requests for the FRT-15, including those detailing numerous customer issues stemming from the trigger devices.  As previously contended, Plaintiffs have produced redacted versions of these documents, thereby admitting that those documents were discoverable.  Issues relating to distributor preferences, customer issues, and warranty repairs are relevant in assessing noninfringing prior art and improvements made to the FRT-15 trigger by Defendants.  In addition, this information is relevant in assessing Plaintiffs' claims for reasonable royalties and lost profits.  The best method by which to assess the veracity of these claims is to identify and communicate with these unknown individuals.  Thus, the Plaintiffs may not now raise an objection based on relevance and should be ordered to produce documents fully responsive to these requests in unredacted form.

## CONCLUSION

Defendants respectfully ask this Court to compel Plaintiffs to produce unredacted versions of all requested documents.

## CERTIFICATE OF ATTORNEY CONFERENCE

In accordance with L.R. 7.1(B) and (C), a conference occurred on September 1, 2022, between the undersigned counsel for Defendants and attorneys Glenn Bellamy and Charles Pfister on behalf of Plaintiffs, during which the topic of producing unredacted documents was discussed.  The attorney conference was

conducted through several emails.  No agreement was reached on those issues and, thus, this Motion is being filed.

<u>**CERTIFICATE OF WORD COUNT**</u>

Undersigned counsel certifies per L.R. 7.1(F) that this memorandum contains 3,748 words.

September 1, 2022                    Respectfully submitted,


_s/ Adam V. Floyd_

Adam V. Floyd
Texas Bar No. 00790699
**Floyd IP**
3203 Bluffs Lane
Parker, Texas 75002
Tel. No.: (512) 497-7500
Email: AFloyd@FloydIP.com

*Attorney for Defendants*