## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**RARE BREED TRIGGERS, LLC, et al.,**

       Plaintiffs.

    -vs-

**BIG DADDY ENTERPRISES, INC., et al.,**

       Defendants.

CASE NO. 1:21-CV-00149-RH-HTC

---

## OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
## UNREDACTED DOCUMENTS

Plaintiffs Rare Breed Triggers, LLC ("Rare Breed") and ABC IP LLC ("ABC") (collectively, "Plaintiffs") oppose Defendants' Motion to Compel Unredacted Documents (hereinafter "Defendants' Motion to Compel") (*Dkt.* 168).

### I.  <u>Introduction</u>

Defendants' Motion to Compel is a ploy. Defendants use carefully crafted language to present their motion in hopes of avoiding a public relations fallout. However, at its core, Defendants' Motion to Compel is an unrestricted request for a complete unveiling of Plaintiffs' customers. When looking at what has actually been redacted, and what Defendants are actually seeking to compel, it is clear that

1

Defendants have no legitimate interest in the disclosure of this information. Defendants simply want a trophy to symbolize their ability to hit Plaintiffs where it hurts.

Defendants' Motion misleads the Court as to *what* has been actually redacted from Plaintiffs' document production. Defendants suggest that Plaintiffs redacted whole "sections" of material including sections "complete with customer information." *Dkt.* 168 at 3. But Defendants are misstating the truth. The material that was redacted from Plaintiffs' document production was painstakingly limited to *only* personally identifiable information of customers in customer service emails.   This type of material is addressed in the Parties' duly negotiated Agreement Governing the Protection and Exchange of ESI. *Dkt.* 116. Specifically, the Parties agreed that "personal information or personally identifying information" need not be preserved or produced absent good cause, including a showing of substantial need and undue hardship. *Id.* Defendants have not met their burden in this regard.

Plaintiffs were—and remain—highly conscientious of their customers' privacy and submit that their customers' names, home addresses, and personal email addresses were not (and are not) probative of any issue in this case. Moreover, were Defendants to obtain this information, they would not be able to use the identity of Plaintiffs' customers to trace down and generate any statistically

relevant or admissible evidence. Plaintiffs *did not* redact content from the body of any email, nor did Plaintiffs redact any material which may be otherwise probative of the issues Defendants say they wish to investigate further. And any inadvertent redactions or inconsistencies have already been corrected.

A cursory reading of Defendants' Motion to Compel might make a third-party believe that Plaintiffs went wild with redactions, attempting to hide "information" from the Defendants which Defendants could use for (1) identifying non-infringing alternatives; (2) determining whether Rare Breed could meet consumer demand; and (3) providing information relevant to Plaintiffs' recovery. *Id.* at 3. But this is not the case. At no time did Plaintiffs ever conceal any substantive fact that could be gleaned from their customer service email submissions; the only material Plaintiffs redacted was the identity of their known customers from customer service emails. This was done out of respect and concern for customers' privacy, and in accordance with the discovery parameters negotiated by the Parties. *See Dkt.* 116.

Defendants now seek a court order compelling Plaintiffs to reveal their customers' identities, for the stated purpose of enabling Defendants to contact those customers. Defendants seek permission to invade the privacy of those customers and subject those customers to unwanted harassment and/or intrusion. Defendants have not pointed to any evidence for *how* they would responsibly

contact Plaintiffs customers—were those customers' identities to be revealed—nor have Defendants intimated how the identity and personally identifiable information of customers would better prove what the substantive (and unredacted) body of the emails allegedly cannot.

Defendants' Motion to Compel was brought for no legitimate purpose and seeks information not likely to lead to the discovery of relevant evidence. It ignores the clear boundaries negotiated in the ESI Protocol and is, yet again, another expense of judicial resources that should have been avoided. The identity of Plaintiffs customers, in itself, is not probative of any issue in this action, nor would it lead to probative information. Defendants should not be permitted to intrude on the sanctity of private citizens in this way if there is no legitimate and compelling need. Here, there is no legitimate or compelling need.

## II.   <u>Legal Principles</u>

The Supreme Court has instructed that there are "ultimate and necessary boundaries" to discovery. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978). Courts have also routinely found that a party's redactions are appropriate where the information redacted was not relevant to the issues of the case. *See Bear Creek Cranberry Co. LLC v. Cliffstar Corp.*, 2011 U.S. Dist. LEXIS 76787 (W.D.N.Y. July 15, 2011); *see also Drossin v. Nat'l Action Fin. Servs., Inc.*, No. 07-61873-CIV, 2008 U.S. Dist. LEXIS 110635, 2008

WL 5381815 (S.D. Fla. Dec. 19, 2008); *In re Yasmin and Yaz (Drospirenone) Mktg.,* No. 3:09-md-02100-DRH-PMF, 2010 U.S. Dist. LEXIS 99541, 2010 WL 3780798 (S.D. Ill. Sept. 22, 2010); *Abbott v. Lockheed Martin Corp.*, No. 06-cv-0701 MJR, 2009 U.S. Dist. LEXIS 15329, 2009 WL 511866 (S.D. Ill. Feb. 27, 2009); *Spano v. Boeing Co.*, No. 3:06-cv-00743-DRH-DGW, 2008 U.S. Dist. LEXIS 31306, 2008 WL 1174460 (S.D. Ill. Apr. 16, 2008); *Gates v. Rohm and Hass Co.*, No. 06-1743, 2007 U.S. Dist. 5266, 2007 WL 295416 (E.D. Pa. Jan. 29, 2007).

Furthermore, where the Parties agree that "personal information or personally identifying information, such as contact information, demographics, anthropometrics, or health data" are specific categories of ESI that "need not be preserved …", it cannot be said that Plaintiffs' redactions were "unilateral or unjustified. This scenario is similar to when parties predetermine the boundaries of what privileged information needs to be logged versus what need not. *See Orthopaedic Hosp. v. DJO Global, Inc.*, 2020 U.S. Dist. LEXIS 241393, *15 (S.D. Cal. Dec. 22, 2020) (holding that Courts encourage parties to enter into agreements to narrow discovery only to sources most likely to yield relevant information and to streamline the process); *see also Burlington Northern & Santa Fe Ry. V. United States Dist. Court,* 408 F.3d 1142, 1149 (9th Cir. 2005) ("When deciding discovery disputes, a district court may consider whether 'the parties ha[d] an agreement that

Plaintiff was not required to log [certain emails]' and other 'agreements or stipulations among the litigants.'").

## III.   <u>Argument</u>

Defendants' Motion to Compel is rife with carefully selected language and misleading statements of fact. This was a calculated move, intended to conceal the true nature and objective of Defendants' Motion to Compel: a court-ordered exposé of Plaintiffs' customer identities. Defendants' Motion fails for three reasons:

1. Defendants overgeneralize what was *actually* redacted from Plaintiffs' production and ignore the fact that the only information redacted was previously agreed by the Parties to be irrelevant.

2. Defendants fail to explain *how* the information they seek would lead to the discovery of admissible evidence. The volume of discovery that has been produced means that unless Defendants plan to contact thousands of Plaintiffs' customers, Defendants will obtain statistically insignificant numbers which will unfairly distort the true nature of the evidence. Moreover, Plaintiffs fail to explain *how* they could enter the evidence they obtain from Plaintiffs' customers into the record making their intrusion into private citizens' lives unwarranted and pointless.

3. Defendants ignore their own arguments and attempt an end-run at making their case rather than using the "numerous documents" they admit to already having.

### a. Defendants' Motion to Compel Overgeneralizes the Redacted Material and Mischaracterizes Its Purported Relevance

First, Defendants' Motion to Compel fails because it overgeneralizes what was redacted from Plaintiffs' production. Rather than explain that the nature of Plaintiffs' redactions was *specifically* limited to only name, email address, and other personally identifiable information of Plaintiffs' known customers contained in customer service emails, Defendants make blanket generalizations. *See e.g., Dkt.* 168 at 1 ("Plaintiffs have produced documents in response to requests for production, but they redacted the documents."); *see also id.* at 3 ("Plaintiffs have not argued that the production of the redacted sections complete with customer information is a burdensome or expensive endeavor…."); *id.* at 7 ("On August 17, 2022, Plaintiffs produced a large number of documents containing redactions."). Defendants never acknowledge that—in total—over 7000 documents have been produced in this action by Plaintiffs, and only a fraction contain redactions. And of that fraction, the *only* information (save for business pricing information, permitted to be redacted by Court order, *Dkt.* 91) that was redacted was customer identities and personally identifiable information of known customers from customer service emails. This is quite clear from Defendant's *Ex.* 7 which was submitted under seal.

There, clearly, the only redated information is customer identity and personally identifiable information

Defendants state that, "Plaintiffs have produced redacted versions of documents relating to distributor requests …" but this is a mischaracterization. Plaintiffs actually produced documents relating to prospective dealer inquiries in unredacted form. *See Ex.* A.[1] Even when approached with an inquiry about inconsistent redactions, Plaintiffs informed Defendants that "inquiries solely about possibly becoming a dealer or about dealer pricing … were not redacted." *Dkt.* 168-8 at 2. Indeed, Plaintiffs assured Defendants that "any inconsistency in application … was inadvert and we will correct …." *Id.* Further to this point, Defendants served a copy of their Exhibit 7 on Plaintiffs on August 31, 2022, the day they filed their Motion to Compel. This was at 4:28 PM. *Ex.* B. Plaintiffs noticed that there were a very small number of documents relating to dealer inquiries that had been inconsistently redacted. Plaintiffs informed Defendants that they would un-redact those documents to maintain consistency with the other dealer inquiries that were unredacted. *Id.* Plaintiffs informed Defendants of this at 5:25 PM. *Id.* But Defendants filed their motion at or around the same time as receiving Plaintiffs' note about correcting redactions, electing to file misleading documents and rely on

---

[1] Exhibit A is merely representative of the thousands of inquiries received by Plaintiffs from interested and prospective dealers. Plaintiffs' intention for these types of emails has always been to produce them without redaction.

misstatements of asserted facts. *Dkt.* 168. Plaintiffs corrected the mistakes and served corrected documents on Defendants on September 13. *Ex.* C.

Defendants argue that while they "do not have the burden of establishing relevance, it has nonetheless done so." *See Dkt.* 168 at 12. But Defendants *do* have the burden of showing "good cause, including a showing of substantial need and undue hardship" pursuant to the negotiated Agreement Governing the Protection and Exchange of ESI. *Dkt.* 116. Defendants cannot argue that they have established the relevance of obtaining the personally identifiable information and identity of Plaintiffs' customers. The Parties have already agreed that "personal information or personally identifying information, such as contact information, demographics, anthropometrics, or health data" is not a relevant portion of discovery, thus electing to exclude it from the preservation requirements. *See Dkt.* 168 at 5. Pursuant to the Parties' duly negotiated ESI Protocol, Plaintiffs have properly redacted from view irrelevant and sensitive personally identifying information and did *not* redact any further information from the body of the emails. *Dkt.* 168-9 at 3 ("Plaintiffs have likewise redacted information that specifically identifies a purchaser (name, email address, address, phone number) from customer service emails. *In contrast, inquiries solely about possibly becoming a dealer or about dealer pricing (where there is no indication that the person or business had made a purchase) were not redacted.*") (emphasis added); *see also ex.* A.

Defendants suggest that "Plaintiffs could have sought a protective order if the information were truly irrelevant and highly sensitive." *Dkt.* 168 at 12. But this was unnecessary in light of the discovery parameters already in place. Defendants failed to heed the previous work that has been done in this case, instead opting to needlessly involve the Court. Accordingly, Defendants have no legitimate basis to seek a public order compelling the unredacted identity of Plaintiffs' customers.

### b. Defendants Fail to Explain How the Information They Seek Would Lead to Relevant or Admissible Evidence or How They Could Use It

Second, Defendants' Motion to Compel fails to explain *how* the information they seek would lead to the discovery of relevant or admissible evidence. Since Defendants did not demonstrate to the Court what specific types of evidence they seek to find by using the unredacted identity of Plaintiffs' customers—and how they will use it—Plaintiffs will.

Defendants' Motion to Compel focuses on extraneous, irrelevant considerations such as spoilation of evidence and objections to RFPs.[2] These considerations are

---

[2] There can be no penalty to Plaintiffs for spoilation of evidence—regardless of whether Defendants' unsupported accusations are true. The ESI Protocol does not require preservation of customer identities and personally identifiable information—it is irrelevant. This is incontrovertible. *Dkt.* 116.

Defendants' RFPs and Plaintiffs' responses and supplemental responses (Exs. 168-1, 2, 3, 4, 5, 6, 10, 11) are only probative of one thing: the exhaustingly excessive

unfounded and do not instruct the Court on the actual relevance of Plaintiffs'
customer identities. Rather, Defendants unilaterally conclude that they have
"nonetheless" established the relevance of Plaintiffs' customer identities. *Dkt.* 168
at 12. But Defendants cannot be considered to have established anything because
all they have done is recite the *Panduit* factors for damages. *See id.* at 4-5. Were
this a pleading, Defendants would not even meet the *Iqbal* standard, which
expressly prohibits mere recitation of the elements from a statute and a conclusion
that the accused party has satisfied those elements. *Ashcroft v. Iqbal*, U.S. ___ 129
S.Ct. 1937, 1949, 173 L. Ed. 868.

The only effort Defendants made toward "establishing the relevance" of
Plaintiffs' customer identities is to state the following:

- "Upon information and belief, Defendants do not believe that Plaintiffs were
  able to keep up with their own demand, much less the demand that would
  have been added if Plaintiffs had to supply Defendant customers. Contacting
  Plaintiffs customers would provide evidence of extremely long wait times
  and customers that never received product." *Dkt.* 168 at 4.

- "Customer testimony could be invaluable in comparing the functionality of
  the FRT-15 with that of other similarly functioning trigger mechanisms." *Id.*
  at 5.

---

and redundant nature of Defendants' discovery behavior and Plaintiffs' thorough
and continued responses thereto.

- Speaking to Plaintiffs customers would serve to establish a basis for what they would have considered an acceptable non-infringing alternative." *Id.*

If this is the extent of Defendants' "proof" that Plaintiffs' customer identities are relevant, it fails completely. Defendants' first accusation is belied by their own argument that, "Plaintiffs have already produced numerous documents demonstrating their inability to satisfy order for forced reset triggers and their capacity for making said triggers." *Id.* at 16. If Defendants already have "numerous" documents that demonstrate an inability to satisfy orders, there is no need to use Plaintiffs' customers to alternatively prove the same thing. Moreover, these individuals have no knowledge of Plaintiffs' operational capacities. Defendants' second statement does not hold weight because a lay witness, with zero qualifications, cannot authoritatively opine on the functionality of the FRT-15™ compared to that of other similarly functioning trigger mechanisms. Such would be wholly improper. Defendants' third statement is irrelevant considering the fact that Defendants, themselves, have tens of thousands of their own customers who bought either a Rare Breed FRT-15™ (when BDU was Rare Breed's distributor) or who bought an infringing item (the WOT trigger). If Defendants truly need to investigate the buying pool for acceptable non-infringing alternatives (something Defendants could research themselves by conducting a Google search), they could merely ask any of their own *countless* customers.

Taking this analysis one step further, should Defendants be permitted access to the identity of Plaintiffs' customers and their personally identifiable information, the potential information that Defendants might obtain would be statistically insignificant and/or inadmissible. Plaintiffs have produced sales records showing tens of thousands of sales of their FRT-15™ product. But Defendants' present no evidence suggesting that there have been customer service inquiries from each and every purchaser, nor have Defendants explained how they would use the identities of those customers who have emailed the Plaintiffs to obtain statistically representative data. In truth, they cannot. Indeed, the only suggestion Defendants provide for *how* they would use Plaintiffs' customer identities is "to identify and communicate with these unknown individuals." *Dkt.* 168 at 17. Such is an improper way of obtaining any relevant, reliable, and admissible evidence. *SEC v. Gruder*, 2009 U.S. Dist. LEXIS 137596, *11 (N.D. Ga. Jul. 31, 2009) ("The transcript of an investigative interview of a nonparty is inadmissible hearsay …").

- If Defendants merely seek to interview Plaintiffs' customers and use their accounts as evidence at summary judgment, it would be inadmissible hearsay. *Id.*

- Were Defendants to interview customers and validate their accounts in a deposition, they would be limited to five witnesses (Defendants have indicated they plan to take at least five other depositions)—a far cry from

representative, statistically significant data. *See In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 299 F. Supp. 3d 1291 (1367 (N.D. Fla. 2018) (evidence that is not statistically significant is unreliable absent other indicia of scientific reliability).

- Were Defendants to interview customers and subpoena their attendance at trial to validate their accounts, they would be limited to either the geographic limitations contained in Rule 45 for commanded attendance or volunteers— neither of which Defendants have shown to be a reliable, statistically significant means for generating admissible evidence. *Id.*

- Were Defendants to instruct an expert to contact customers and use that information in an expert report, it would be unreliable (as impartially obtained and slanted), inadmissible, and statistically insignificant. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 42181, *16 (N.D. Fla. Mar. 7, 2021) ("Witness interview memos are inadmissible hearsay within hearsay.")

There is no scenario in which Defendants would contact Plaintiffs' customers and be able to generate relevant, admissible evidence. This is especially true given the type of evidence Defendants seek (mostly evidence relating to expert topics, *e.g.*, manufacturing capacity, functionality analyses; licensing considerations pursuant to *Georgia-Pacific*) and the fact that they provide no explanation for how

they intend to responsibly seek it. Defendants would be invading the privacy of citizens chasing down individual customers who cannot authoritatively opine on anything; cannot offer admissible, statistically relevant evidence; and are not guaranteed to even pick up the phone or respond to an intrusive email.

At the end of the day, Defendants simply want an order compelling Plaintiffs to disclose their customer identities as a means of either misplaced retribution or to offset the public relations fallout Defendants are currently experiencing.[3]

### c. Defendants' Motion to Compel is Self-Defeating

Defendants' Motion to Compel also fails because it is self-contradictory. Defendants argue, on the one hand, that they need disclosure of customer identities to investigate: (1) noninfringing alternatives to the FRT-15; (2) whether Rare Breed could meet consumer demand so as to satisfy its claim for lost profits; and

---

[3] Defendants argue that Plaintiffs have made "half-hearted" claims and are trying to save face on social media by redacting customer identities. *See Dkt.* 168 at 12. Quite the opposite is true: Defendants have made statements in previous filings regarding the legality of forced reset triggers—a product Defendants sold and continue to sell—which have caught the ire of their online following. This has led to a severe backlash against Defendants, even prompting public statements from Defendant Tony McKnight. Prior to Defendants filing their Motion to Compel, Plaintiffs tried to implore the sound judgment of Defendants. *See Dkt.* 168-9 at 1 ("[B]efore seeking a court order to compel customer identity or to contact Rare Breed customers, I again implore you to consult your client about the business consequences of such a move, particularly in light of the most recent public reaction."). Defendants characterized this as a threat (*Dkt.* 168 at 7) but it was nothing of the sort. Plaintiffs were merely trying to speak reason to Defendants who were in the midst of a public relations firestorm. A motion to compel sensitive customer identifying information at such a time would only serve to further harm Defendants' image.

(3) information relevant to potential settlement. *Dkt.* 168 at 3. Yet, on the other hand, Defendants appear to admit that they already possess evidence on all of these points.

For instance, Defendants point to "bulk purchasers of FRT-15 trigger devices" as possibly pondering "other noninfringing devices." *Id.* at 5. However, Defendants already have myriad emails showing the identities of interested bulk purchasers, dealers, and distributors. *Ex.* A; *Dkt.* 168-9 at 3. Defendants even admit that "Plaintiffs have already produced numerous documents demonstrating their inability to satisfy order for forced reset triggers …." *Dkt.* 168 at 16.

Defendants also argue that, "[c]ustomer testimony could be invaluable in comparing the functionality of the FRT-15 with that of other similarly functioning trigger mechanisms." *Dkt.* 168 at 5. Defendants double down on this, insisting that unchecked, third-party witness testimony is "relevant in assessing noninfringing prior art and improvements to the FRT-15 by Defendants." *Id.* at 17. But surely Defendants do not think a lay witness, with no stated qualifications or technical expertise, would qualify as an appropriate authority to testify on topics such as trigger functionality or noninfringing alternatives? Furthermore, how could a customer of Plaintiffs be expected to testify about "improvements made …by Defendants"?

Defendants also point to Plaintiffs' customers as possible sources of authority on non-infringing alternatives. *See id.* ("Speaking to Plaintiffs customers would serve to establish a basis for what they would have considered an acceptable non-infringing alternative."). Defendants claim that "many of the customers had complaints about the FRT-15 which would not apply to the WOT." *See e.g.*, Ex. 7 at RBT1328-1329, 2415, 2422-2429, 2433-2441." *Dkt.* 168 at 6. But if Defendants know that customers complained about the FRT-15™ (including the date of each message) and cite myriad evidence to support that, why do Defendants need to ask the same customer whether they had a complaint about the FRT-15™? More importantly, how could those customers authoritatively opine: (1) that aspects of the WOT *truly* do not apply to the FRT-15™; but (2) if they do, they constitute legal distinctions, thus making the WOT (or some other product) a "non-infringing substitute." It cannot be done.

Defendants further state that interviewing Plaintiffs' customers will provide information relevant to a settlement. But this is not an appropriate ground for seeking—or compelling—discovery, especially when Defendants have not been deprived of any substantive content from Plaintiffs' emails.

Defendants' Motion to Compel defeats itself and thus, must be denied.

## IV.   **Conclusion**

For the reasons contained herein, Defendants' Motion to Compel the Unredacted Identity of Plaintiffs' Customers must be denied.

## LOCAL RULE 7.1(F) CERTIFICATION

Undersigned counsel for Plaintiffs Rare Breed and ABC IP, LLC certifies that this combined opposition contains 3,731 words, exclusive of certifications and signature block.

DATED: September 15, 2022          Respectfully submitted,

/s/*Glenn D. Bellamy*
Glenn D. Bellamy, Esq. (Ohio Bar No. 0070321)
  gbellamy@whe-law.com
Charles D. Pfister, Esq. (Ohio Bar No. 0097790)
  cpfister@whe-law.com
**Wood Herron & Evans LLP**
600 Vine Street
Suite 2800
Cincinnati OH 45202
T: (513)241-2324
F: (513)241-6234

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 15, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a copy to all counsel of record.

/s/Glenn D. Bellamy
Glenn D. Bellamy, Esq.
***Attorney for Plaintiffs***