# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**RARE BREED TRIGGERS, et al.**
**Plaintiffs.**

  **-vs-**                                    CASE NO. 1:21cv149-RH-HTC

**BIG DADDY ENTERPRISES, et al.**
**Defendants.**

---

## DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER ON THE MOTION TO DISQUALIFY GLENN BELLAMY

---

Big Daddy Enterprises, Inc., ("BDE"), Big Daddy Unlimited, Inc. ("BDU"), BlackStock, Inc., Wide Open Enterprises, LLC ("WOE"), We Got Ammo, Inc. ("WGA"), Sherrie McKnight, Anthony McKnight, Douglas Rios and nonparty Performance Triggers, Inc. (together, "Defendants") hereby file this Motion for Reconsideration of Order on the Motion to Disqualify Glenn Bellamy.[1] In support, Moving Defendants state:

---

[1] Defendants are relying upon the Motion to Disqualify Glenn Bellamy filed in related case 1:25-cv-00181-RH-MAF as ECF No. 62.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The background facts giving rise to Defendants' Motion to Disqualify Counsel Glenn Bellamy are described in the original and renewed motions filed in related case 1:25-cv-00181-RH-MAF, which are incorporated herein by reference.  *See* ECF Nos. 62, 78 (collectively referred to as the "Motions").  Defendants renewed those Motions in the present case, requesting the same relief in the above-styled action. ECF No. 212.

The Court ultimately denied those Motions in its Order on the Motion to Disqualify Mr. Bellamy (the "Order"), reasoning that the controlling issue as to whether Mr. Bellamy violated the prosecution bar is whether the extraneous patents were "related to" the '223 patent.  ECF No. 237 at 3.  While the Court acknowledges "related to" is ordinarily interpreted broadly, it was disturbed by its finding that the prosecution bar at issue has no explicit time limit.  *Id.* at 4.  The Court held that it would be "extraordinary to *forever* bar an attorney from prosecuting any patent 'related to' the '223 patent only in the sense that the patent dealt with the same general subject matter[.]"  *Id.*  The Court's rationale is that the absence of a time limit supports this view, and that it would be problematic to forever bar an attorney from prosecuting any patent dealing with forced reset triggers or otherwise related to the '223 patent.  The Motions were ultimately denied on the basis that Bellamy's alleged violations were not clear, and that the appropriate remedy would be to

2

prohibit his further involvement in prosecuting patents, not limiting his access to Defendants' highly confidential documents or continuing involvement in this litigation. *Id.*

The Court did not fully address whether Plaintiff's definition of "related to" as it pertains to the prosecution bar had any scope at all, given that it would be a legal impossibility for Bellamy to file any continuations, continuations-in-part, or divisionals pertaining to the '223 patent. In addition, the prosecution bar as written is not unlimited in time, and neither party has contended otherwise. Finally, the Court did not address Bellamy's numerous discovery violations in deciding whether it is appropriate to limit his access to Defendants' highly confidential documents or continuing involvement in the instant lawsuit or other appropriate form of relief. For these reasons, Defendants respectfully request reconsideration of the Court's denial of their Motion to Disqualify Glenn Bellamy.

## II.    MOTION FOR RECONSIDERATION

In this case, the Court (1) did not consider whether Plaintiff's definition of "related to"  as used in the prosecution bar could be given any legal effect; (2) did not consider that the prosecution bar is implicitly limited in time; and (3) did not consider Bellamy's numerous discovery violations in deciding whether Bellamy's

conduct constituted a "compelling reason" for disqualification or warrants some other form of equitable relief.

A. <u>Rare Breed's interpretation of "related to" as used in the prosecution bar would render the provision meaningless</u>

Rare Breed submits that that for a patent application to be "related to" the '223 patent—and therefore covered under the prosecution bar—it must have a "formal relationship" with the same. ECF No. 213 at 15. Plaintiffs argue that the patents are formally related only when traceable to a common ancestor application through continuations, continuations-in-part, or divisionals. The Court appears to lend this definition some credence, noting that "the issue is not free of doubt" and that the prosecution bar has no explicit limit on subject matter. ECF No. 237 at 3–4. However, Rare Breed concedes that no continuation, continuation-in-part, or divisional could have been filed at the time the PO was signed (a fact known to both parties at the time of execution). Instead, Rare Breed changes its interpretation of "related to" to mean no reexamination or reissue could be prosecuted; it even went so far as to deny putting forth the first interpretation. ECF No. 220 at 4. However, reexams and reissues were already explicitly off limits, so "related to" would again be without meaning. Thus, there would be no need for the phrase "related to," under Rare Breed's two constructions of the phrase "related to."

Defendants' definition of "related to" gives life to the phrase as used in the prosecution bar and is entirely consistent with caselaw across the country generally

4

holding that prosecution bars are co-extensive with the subject matter of the asserted patents.  A resolution of the phrase in Defendant's favor would establish Bellamy's violation and confirm that disqualification is the appropriate remedy.

B. <u>The prosecution bar is not unlimited in time</u>

While the Court agreed that "related to" is ordinarily broadly interpreted, it remarked that the prosecution bar is different from the standard orders used in various districts in that the prosecution bar has no time limit.  ECF No. 237 at 4. Neither party has asserted that the prosecution bar is unbounded in time.  For example, Bellmay has continued prosecuting FRT patents after the close of the case, but Defendants did not raise these as PO violations, with the exception of the two that were filed mere weeks after the case was settled on the basis that Bellmay had already started drafting them, while subject to the prosecution bar.

Moreover, the PO does implicitly have a time limit, and it seems unlikely the N.D. Ohio would have intended otherwise.  The duration of the prosecution bar begins upon the Court entering it and ends by natural consequence of the case terminating.  The prosecution bar (¶ 2.2(a)) states that Highly Confidential information may not be disclosed to persons prosecuting patent applications "related to" the patent-in-suit.  When the case terminates, the parties no longer have access to Highly Confidential information.  Technically, within 60 days of the case being terminated when all such documents are to be destroyed.  ¶ 5.1.  While the

obligations under the PO survive termination of the action, the prosecution bar would no longer be in effect.  The bar is a bar against the receipt of Highly Confidential information, while prosecuting related patents.  Thus, two elements are required, prosecuting related patents *and* the ability to receive Highly Confidential information (i.e., the case in on-going or a party failed to destroy such documents after the case was terminated).

C. <u>The prosecution bar does not contemplate inter partes review proceedings</u>

Rare Breed contends that defense counsel's participation in an inter partes review involving an FRT patent violates the Protective Order, under Defendants' interpretation.  That contention is incorrect.  Nothing in the text of the Protective Order prohibits such participation in inter partes review proceedings (which was likely drafted prior to PTAB), and courts addressing the issue generally exempt inter partes review from the definition of "patent prosecution" as used within a patent prosecution bar.

At the outset, the language of the protective order states plainly that attorneys participating in the present litigation are foreclosed from "participating in the prosecution of any present or future application" related to the patents-in-suit.  Cases addressing the issue have uniformly held that "patent prosecution" as defined, does not include "representing a party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination

or *inter partes* reexamination)." *Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, No. C-09-02180 SBA DMR, 2011 U.S. Dist. LEXIS 97403, at *2 n.1 (N.D. Cal. Jan. 20, 2011). This is keeping with *In re Deutsche Bank*, 605 F.3d 1373 (Fed. Cir. 2010). in that a party challenging a patent's validity (which is necessarily solely based on public information) would gain no unfair advantage by having access to the other party's confidential information. Thus, Rare Breed's expansive reading of the prosecution bar to encapsulate inter partes review proceedings is directly controverted by the plain language in the protective order, as well as well-established caselaw seeking to define the scope of patent prosecution activities.

Indeed, Defendants' reading of the prosecution bar coincides with a line of cases generally holding that inter partes review is a distinct proceeding separate and apart from patent prosecution. Specifically, *inter partes* review is a "trial proceeding . . . to review the patentability of one or more claims in a patent only on a ground that could be raised under [35 U.S.C.] §§ 102 or 103, and only on the basis of prior art consisting of patents or printed publications." *See* USPTO.gov, https://www.uspto.gov/patents/ptab/trials/inter-partes-review (last visited Dec. 21, 2025). Accordingly, the confidentiality concerns underlying a patent prosecution bar are not implicated in *inter partes* review proceedings, which are statutorily limited to publicly available information. *Id.* For this reason, courts generally

7

exempt inter partes review from the definition of patent prosecution. *Endo Pharms. Inc. v. Actavis Inc.*, No. 12 Civ. 8985, 2014 U.S. Dist. LEXIS 112642, at *4 (S.D.N.Y. Aug. 13, 2014) (concluding that IPR is exempt from the patent prosecution bar after concluding that IPR does not implicate competitive decision making or claim amendment and that the potential injury to the moving party outweighs the potential injury to the opposing party); *see also Google Inc. v. Jongerius Panoramic Techs., LLC*, Case IPR2013-00191, Paper No. 50, at 4. (P.T.A.B. Feb. 13, 2014) (stating that an inter partes review proceeding is "neither a patent examination nor a patent reexamination.  Rather it is a trial, adjudicatory in nature and constitutes litigation."); *EPL Holdings, LLC v. Apple, Inc.*, No. C-12-04306 JST (JSC), 2013 U.S. Dist. LEXIS 71301, at *9 (N.D. Cal. May 20, 2013) (holding that patent owner may participate in third-party initiated review proceedings so long as counsel is prohibited from assisting in any crafting or amendment of patent claims).

All considered, it is clear that the plain language of the prosecution bar does not contemplate inter partes review, and courts generally hold that IPR proceedings are distinct from patent prosecution activity.  To hold otherwise would lead to an incongruous result in which Rare Breed itself would also be prohibited from participating in the inter partes review for the reason that inter partes review authorizes a patent owner to cancel any challenged patent claim or propose substitute claims.  35 U.S.C. § 316(d).

D. <u>The Court did not address Bellamy's numerous discovery violations in deciding whether it is appropriate to limit his access to Defendant's highly confidential documents</u>

Furthermore, the Court did not address Bellamy's various discovery violations in deciding to deny Defendants' Motion to Disqualify. Rather, the Court appeared to base its decision on the belief that the appropriate remedy here would be to prohibit Bellamy's further involvement in prosecuting the patents. Bellamy's discovery violations go hand-in-hand with his numerous, willful violations of the subject prosecution bar, such that his disqualification is the most fitting remedy for the harm which is likely to result from Bellamy's continued participation in this case.

Plaintiffs do not deny Bellamy's numerous discovery violations. *See generally* ECF No. 220 at 12 (dismissing purposeful concealment of discoverable information as "nothing more than routine discovery friction"). Plaintiffs further contend that Defendants fail to identify the discovery obligations with which they accuse Mr. Bellamy of violating. *Id.* at 13. For the sake of clarity, Defendants will endeavor to point out Bellamy's discovery violations with the upmost specificity.

The alleged discovery violations flow from Defendants' request for all patent applications filed by Rare Breed pertaining to forced reset triggers. Ex. 1 RFP No. 101 ("All patent applications filed by or on behalf of Rare Breed LLC, ABC IP LLC, XYZ Disturbution [sic] LLC, and/or any of their owners, members, or officers, and any resulting patents, concerning forced reset triggers and/or trigger devices."). Not

9

only did Bellamy withhold scores of documents, his associate Pfister lied, claiming the request prosecution histories did not exist because the applications were provisional (Bellamy was copied). In response to RFP No. 101, Bellamy stated his very limited production constituted all responsive documents. *Id.* ("RBT006253-006282. Plaintiffs are not aware of any documents or information in their possession, custody, or control that can be further used to respond to this Request."). It would have been a more laborious for Bellamy to cherry-pick documents, combine them, bates label them, and then produce them, than it would have been him to simply produce the entire files.

**Table 1: Documents withheld from Production**

| Application | Documents withheld |
|---|---|
| 63/276,094[2] | Specification<br>Figures<br>Patent assignment<br>Fee sheet<br>Filing receipt |
| 63/276,090 | Patent assignment (Ex. 16 at 4-6)<br>Power of attorney (*id.* at 7-8)<br>Fee sheet (*id.* at 25-26)<br>eReceipt (*id.* at 27-29)<br>Data sheet (*id.* at 30-37)<br>Inventor's declaration (*id.* at 9-10) |

---

[2] This application is not publicly available; however, the application should have included the items listed and might possibly have included additional documents.

| | |
|---|---|
| 63/296,951 | Filing receipt (Ex. 18 at 1-3)<br>Assignment (*id.* at 37)<br>Specification (*id.* at 14-23)<br>Figures (*id.* at 8-13)<br>Fee sheet (*id.* at 24-25)<br>eReceipt (*id.* at 26-28) |
| USPN 11,346,627 | Data sheet (Ex. 19 117-124)<br>Drawings (*id.* 3 at 106-11)<br>Abstract (*id.* 3 at 103)<br>Specification (*id.* at 93-102)<br>Track One request (*id.* at 89-90)<br>Fee sheet (*id.* at 85-86)<br>Filing receipt (*id.* at 112-148)<br>Acknowledgment receipt (*id.* at 87-88)<br>Payment receipt (*id.* at 104-5)<br>IDS with prior art references (*id.* at 38-79)<br>Filing receipt (*id.* at 80-86)<br>One Track grant (*id.* 36-37)<br>Notice of allowance (*id.* 14-35)<br>Post issue comments (*id.* 5-13)<br>Issue notice (*id.* at 4-5)<br>Corrections (*id.* at 1-3) |
| 63/374,941 | Assignment (Ex. 21 at 9)<br>Power of attorney (*id.* at 10-11)<br>Inventor declaration (*id.* at 12-13)<br>Specification (*id.* at 14-33)<br>Abstract (*id.* at 34)<br>Figures (*id.* at 35-52)<br>Data sheet (*id.* at 53-50)<br>Fee receipt (*id.* at 61-62)<br>Acknowledgement (*id.* at 63-65) |

In the experience of undersigned counsel, the paralegal or assistant who manages patent prosecution files takes extreme measures in maintaining a complete and orderly file. Malpractice premiums associated with patent prosecution are the

11

highest in the legal industry primarily due to missing a deadline which can be fatal and lead to an easy to prove malpractice claim.  As such, the quality of assistants used in patent prosecution tends to be a cut above the rest.  Based on the experience of undersigned counsel, the computer-generated appearance of the FWH's of said applications, and that prosecution in violation of the P.O.'s occurred in 2021 to 2022, it is believed that the FWH's which were produced in part and withheld were computer generated.  As such, it is the professional opinion of the undersigned that someone deliberately cherry-picked documents from these complete prosecution records for the two document productions.  This is especially true, as the patent applications bear an internal designation of "RARETRG."  *See e.g.*, ex. 3 at 1; ex. 4 at 1.  Bellamy admits that this designation was used by his firm "Wood Herron & Evans' [as an] internal reference ... to indicate the client name, followed by a number to indicate the matter."  ECF No. 213 at 5, n.1.  This further supports the proposition that someone deliberately selected portions of particular applications to produce while withholding others, as one could have easily searched for the client "RARETRG" and arrived at a list of all RB matters.

Having established that Bellamy willfully and repeatedly withheld documents to which Defendants would have been entitled in discovery, it is evident that Bellamy's conduct arose to the sort of "clear violation" that would provide a compelling basis for his disqualification.  *In re BellSouth Corp.*, 334 F.3d 941, 961

(11th Cir. 2003) (quoting *Tex. Catastrophe Prop. Ins. Ass'n v. Morales*, 975 F.2d 1178, 1181 (5th Cir.1992)).  And indeed, the harm of which Defendants complain is not limited to Bellamy's improper prosecution of extraneous patents, as that harm is being perpetrated during discovery in this very case.

In the interest of correcting the clear errors set forth above, and to prevent the manifest injustice that would result from Bellamy's continued unprotected divulgence of Defendant's highly private, confidential, and trade secret information, Defendants respectfully urge the Court to grant this Motion for Reconsideration.

E.  <u>The Court did not fully address other appropriate remedies</u>

In its original motion, Defendants also requested "further relief as the Court deems just and proper."  In denying the request for disqualification, the Court opined "the appropriate remedy … would be to prohibit [Bellamy's] further involvement in prosecuting the patents."  It is unclear whether this remedy was intended to constitute part of the Court's order, however, Defendants point out that Bellamy is again prosecuting a patent in the forced reset space–this one is designed to read directly on the Super Safety, one of the accused devices in this case.  ECF No. 242-3.  Bellamy or at least his partner continues prosecuting patent applications in the Blakely and Strbac families.  Both stemming from applications wrongfully prosecuted during the prior cases and both incorporating be reference the patent-in-suit.  Out of an abundance of caution, Defendants have

13

simultaneously filed an Emergency Motion to Enter a Protective Order in this case which explicitly and very clearly sets forth a bar on any further prosecution activity related to the subject matter of the patent-in-suit.

While the Court notes that such a remedy prevents "future improper harm," it does not address any just and proper remedy for Bellamy's past actions. Defendants suggest consideration of the following:

- Monetary sanctions against Bellamy;
- Submitting Bellamy's PO and discovery violations to the state bar for investigation; and/or
- Issuing a formal reprimand.

## CERTIFICATE OF CONFERRAL

I certify that conference with counsel for Plaintiff regarding the relief requested in this Motion via emails dated December 15–22 and by phone on December 17, on which I was copied and counsel for Plaintiff advised it would oppose the motion.

## CERTIFICATE OF WORD COUNT

Undersigned counsel for Defendants certifies per L.R. 7.1.(f) that this Motion and memorandum contains 2,850 words.

December 31, 2025                              Respectfully submitted,


                                              s/ *Michael J. Smith*
                                              Michael J. Smith
                                              Texas Bar No. 24037517
                                              **The Fowler Law Firm P.C.**
                                              3301 Northland Drive, Suite 101
                                              Austin, Texas 78731
                                              Tel. No.: (512) 441-1411
                                              Email: msmith@thefowlerlawfirm.com

                                              *Attorney for Defendants*


## CERTIFICATE OF SERVICE

I certify that, on December 31, 2025 I electronically filed the foregoing with this Court using the CM/ECF system, which will send notification to counsel for all other parties.


                                              s/ *Michael J. Smith*
                                              Michael J. Smith


15