**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

**RARE BREED TRIGGERS, et al.**
**Plaintiffs.** CASE NO. 1:21cv149-RH-HTC

-vs-

**BIG DADDY ENTERPRISES, et al.**
**Defendants.**

---

# RESPONSE TO PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE

---

Defendants Big Daddy Enterprises, Inc., ("BDE"), Big Daddy Unlimited, Inc. ("BDU"), BlackStock, Inc., Wide Open Enterprises, LLC ("WOE"), We Got Ammo, Inc. ("WGA"), Sherrie McKnight, Anthony McKnight, Douglas Rios and nonparty Performance Triggers, Inc. file this Response to Plaintiff's Motion for an Order to Show Cause [ECF No. 304] and request Plaintiff's motion be denied.

By Order of the Court [ECF No. 311], Defendant's response was due June 19, 2026, a federal holiday, making this submission timely as it is being filed on the "next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C).

Plaintiffs seem to again be muddying the waters regarding the scope of this Contempt Proceeding and the scope of the co-pending arbitration. This Contempt

Proceeding relates solely to alleged yet unsubstantiated claims that Defendants have violated the Consent Judgment and Permanent Injunction in this case by selling or offering to sell WOT and Alamo-15 triggers and devices that are substantially the same. Meanwhile, there is a co-pending arbitration in the related case with an arguably broader scope. This conflation appears repeatedly in Plaintiff's Motion by pointing to both the Court's discovery orders in this case and its findings of contempt in the related case, thus mixing the issues between the two. Such a muddling is both improper and unwarranted.

Once again, Rare Breed Triggers ("RBT") files a motion long on conjecture, but short on any actual facts to support the request for a Show Cause Order. Defendants would reiterate that this Contempt action has a very narrow scope: namely, Defendants can only be in contempt if there is credible evidence that they made, caused to be made, used, caused to be used, imported, offered for sale or sold a product that is "in substance, a Wide Open Trigger or Powered by Graves ALAMO-15 trigger." [ECF No. 234 at 9]. And as this Court further clarified, "The consent injunctions thus apply to the WOT and Alamo-15, not to other forced reset triggers." *Id.* at 5. And further stating that, "The bottom line: the injunctions apply only to any device that is, in substance, a WOT or Alamo-15. A device may be, in substance, a WOT or Alamo-15 even if it has insignificant features that are different. But a different device is not, in substance, a WOT or Alamo-15." *Id.* at 5-6.

In its continuing attempts to find violations where none exist, RBT has now filed this Motion for a Show Cause Order again complaining that Defendants have failed to meet their discovery obligations. An analysis of Plaintiff's allegations will demonstrate why these arguments fail and the Motion for a Show Cause Order should be denied.

## DEFENDANTS' FIRST RESPONSES TO DISCOVERY

RBT first complains that when responding to Plaintiff's requests for production, that Defendants, after a diligent search, found no responsive records based on Defendants' assertion that only records after the entrance of the Consent Judgment and Injunction need be produced. No records were found because Defendants did not sell any WOT or Alamo-15 triggers after the Settlement Agreement was signed. In fact, all remaining WOTs were transferred to RBT as part of the Settlement Agreement. This search timeline was reasonable given that the Settlement Agreement between the parties included a specific release of all claims as of the date of the Settlement Agreement.[1] Accordingly, records that predated the Settlement Agreement should be irrelevant to this Contempt tribunal.

[1] The Settlement Agreement specifically states that the Parties "unconditionally releases, acquits and forever absolutely discharges" the other Party "from any and all causes of actions, causes of action, claims, debts, defenses, disabilities, accounts, demands, damages, claims for indemnification, or contribution, costs, expenses or fees whatsoever, whether arising in the United States or elsewhere, whether known or unknown, certain or speculative, asserted or unasserted on account of or in any way concerning the subject matter of this Agreement." [ECF 200-3 at 4-5, ¶ 17.]

Upon the Court's order extending the timeframe back to September 15, 2021, Defendants chose to engage the services of KLDiscovery as it was clear that RBT would not trust or believe any production made by Defendants. As a result, Anthony McKnight and Douglas Rios provided the required declarations concerning their personal searches attesting that, for the initial searches, they searched records from the date of the Consent Judgment. However, neither restricted their searches to that timeframe and neither withheld documents based on the dates.

Counsel for Defendants also informed Plaintiff that the primary responsive records between the September 15, 2021 date and the October 2022 entrance of the Consent Judgment would be records already produced in the original litigations as most of the Big Daddy entities' records had been destroyed and were no longer available. Following the first preliminary injunction issued in the underlying cases and the later execution of the Settlement Agreement, the Big Daddy entities suffered massive and irreparable financial hardship. They had lost their primary revenue source – sales of the WOT and Alamo-15 triggers – and went into rapid decline. *See* Declaration of Anthony McKnight. Over the following nine-month period, the majority of the 165 employees were terminated. By February 2024, Anthony McKnight and all Big Daddy entities had been placed on the VISA and MasterCard MATCH list, resulting in the closure of all merchant accounts, banking relationships,

hosting services, and other online financial services related to the businesses. *Id.* Following these various closures, all access to records was terminated. *Id.*

However, due to RBTs insistence that Defendants were wrongly withholding documents, KLDiscovery was engaged to conduct further discovery searches on behalf of Defendants. This vendor collected data from all phones and computers used by Anthony McKnight, Sherrie McKnight, Douglas Rios and Christopher Rios. An email from the vendor is included here as Exhibit 1 to the Declaration of Michael J. Smith detailing the devices searched and procedures used by KLDiscovery. Attached as Exhibit 2 is a list of search terms used together with annotations regarding the later choice to remove certain terms such as “art” and “Rounds” due to the inability to eliminate hundreds of documents that had nothing to do with FRTs.

Plaintiffs also complain that Defendants’ March 2, 2026 production was incomplete. This accusation is simply not true – the Declaration of Anthony McKnight attached hereto explains the absence of relevant records from the Big Daddy defendants due to the closure of the companies. And also the absence of many records from Performance Triggers, Fast Triggers, Trigger Parts USA and BumpFire as sales records are routinely destroyed after the window for refund or chargeback requests has closed, as is common in the industry. Further, even after engaging an outside vendor to conduct further discovery searches, only an additional 137 potentially relevant documents were produced, clearly demonstrating that the

majority of responsive documents had already been produced or were otherwise unavailable.

**FASTTRIGGERS AND TRIGGERPARTSUSA**

Plaintiffs further complain regarding the lack of relevant records from Fasttriggers and TriggerpartsUSA. The fact of the matter is that neither of these sites actually sold the WOT, Alamo-15 or any product that is in substance a WOT or Alamo-15. *See* Declaration of Anthony McKnight. Plaintiffs point to a single advertising email mentioning the WOT, but cannot identify a shred of evidence that any WOT was actually sold by these entities. As Mr. McKnight states, the advertisement was designed to drive traffic to the FastTriggers website, but Defendants did not have any WOTs available and no sales were made.

Contrary to Plaintiff's allegations of egregious conduct, Defendants contentions in the motions to quash subpoenas directed to various entities including Trigger Parts USA that they were "unaware of any connection between these websites and the Contempt Proceedings" and that, "it is unclear how the documents sought could possibly relevant to the Consent Injunction," were perfectly reasonable and accurate objections. As stated, this proceeding is restricted to the WOT, Alamo-15 and devices that are the same in substance. Given that Trigger Parts USA has not sold a single WOT or Alamo-15, then those statements are entirely proper and correct. Similarly, the lack of production from Andrew Myers and Delta-7 in this

case is simply because neither of them have sold or offered for sale any WOT, Alamo-15 or any product that is in substance a WOT or Alamo-15.

## ALLEGED VIOLATIONS OF THE SECOND DISCOVER ORDER

Plaintiffs once again allege that simply because they have in their possession certain communications involving the Defendants, for example, text exchanges between a defendant and Omar Zumot, that Defendants must have the same documents and more. This is simply not true. As the Court is aware, different individuals may not save the same text messages, emails or other communications. Simply because Plaintiff may have received a communication from a thrd party does not necessarily mean any defendant has saved or maintained a copy of the same communication. Further, Plaintiff points to isolated messages produced by Defendants to claim certain actions or admissions by Defendants. For example, Plaintiffs cite a communication between McKnight and Brian Royce where Mr. Royce asks about WOTs being sold through Fast Triggers. Despite the lack of any further communications, Plaintiff immediately tries to assert this as proof that Fast Triggers was, in fact, selling WOTs – a conclusion not supported by the evidence. And given RBTs penchant for issuing subpoenas, they apparently have chosen not to subpoena Mr. Royce to see if any other remnants of that communication still exist.

Plaintiff also suggests that a single text where Mr. McKnight provides sales data for TriggerPartsUSA.com and PerformanceTriggers.com proves Mr. McKnight

was "deeply involved with the running and controlling sales and marketing." Merely providing data is nothing more than Mr. McKnight reviewing sales data for entities where he may hold an interest, not proof of deep involvement in controlling those entities.

Plaintiffs then point to the tax returns produced by Defendants and again claim deficiencies because records for, for example, Douglas Rios, were not produced – but a review of the Second Discovery Order shows the Court ordered production of the tax returns of: "(a) each defendant that is a corporation or limited liability company, (b) Anthony McKnight, (c) Sherrie McKnight, (d) Performance Triggers Inc., (e) Fast Triggers or, if the Fast Triggers website is not operated by a separate entity, any entity receiving revenue from the Fast Triggers website, and (f) Trigger Parts USA, or, if the Trigger Parts USA website is not operated by a separate entity, any entity receiving revenue from the Trigger Parts USA website." Defendant asserts that all such tax returns that have been completed and filed have been produced (with the limited exception of WOE which may have been inadvertently excluded).

Plaintiffs further argue that revenue and sales information for Fast Triggers and Trigger Parts USA has not been produced, but Defendants produced over 53,000 pages of currently available individual sales information for Bumpfire, FastTriggers, and TriggerPartsUSA. And to the extent individualized sales records are not available, the revenue from those entities are included in the combined tax returns

provided. Further, Plaintiffs recently deposed Mr. McKnight where he testified concerning the tax returns and the revenues reported.

**ALLEGATIONS AGAINST COUNSEL**

Plaintiffs further attempt to paint Defendants' counsel as deceptive as well. However, none of the statements cited by Plaintiff were false:

- The March production did consist of records produced in the previous litigation because the Big Daddy records had been destroyed and, as shown by the later production from KLDiscovery, very few other tangentially responsive documents were found;
- Communications Plaintiff expects to exist simply do not due to the nature of the communications – Signal which automatically deletes communications, text messages and emails which were simply not retained. Simply because Plaintiff has a copy of a communication from a third party is not an implication that a defendant maintained a copy of the same communication.
- Defendants could not have foreseen further litigation from RBT. The mere existence of a Settlement Agreement and Permanent Injunction simply does not rise to the level of "anticipation of litigation." In fact, Mr. McKnight and Mr. Demonico had multiple communications over the past several years regarding the FRT industry, new products,

potential partnerships and other topics and there was never a mention that RBT believed Defendants were in violation of either the Settlement Agreement or the Permanent Injunction. *See* Declaration of Anthony McKnight.

- Plaintiff contends that counsel and Defendants are in violation of the Court's discovery orders for failing to contact third parties, in this case, third parties that put Anthony McKnight and all Big Daddy entities on the MATCH list or otherwise terminated all relationships, for further records. Where a service provider or merchant account provider has terminated all relationships with a customer and cut off all access to records, the customer can no longer be considered to have possession, custody, or control of those records sufficient to create an obligation to try and request them several years after the relationship has been terminated.
- As to records for FastTriggers and TriggerPartsUSA, Plaintiffs are relying on a single advertisement sent by FastTriggers, but at the time, the Defendants did not have any WOTs to sell – their remaining inventory had been transferred to RBT as part of the settlement, so no records showing sales of WOT or Alamo-15 triggers exist as they were not sold.

- Plaintiffs assert that the motions to quash claim no connection between Defendants and FastTriggers and TriggerPartsUSA. However, the contentions were simply that there was no connection between those sites and this contempt proceeding. A true statement given the narrow scope of these proceedings.
- Other allegations by Plaintiff against counsel are addressed substantively above.

Once again, Plaintiff is on a witch hunt hoping to find evidence of wrongdoing that simply does not exist. Documents have been produced and, despite the production of those documents and third-party records obtained from the dozens of subpoenas issued by Plaintiff, it simply cannot substantiate any claim that any Defendant has violated the permanent injunction in this case. Quite the contrary, even the few documents on which they do rely fail to establish anything more than third party conjecture. Defendants should not be ordered to show cause for failing to produce records that simply do not exist.

Accordingly, Defendants request the motion for an order to show cause be denied.

June 22, 2026

Respectfully submitted,

s/ *Michael J. Smith*

Michael J. Smith
Texas Bar No. 24037517
**BAKER LAW GROUP PLLC**
1106 Clayton Lane, Suite 565
Austin, Texas 78723
Tel. No.: (512) 882-2665
Email:
Michael.smith@jbakerlawgrouptx.com

*Attorney for Defendants Big Daddy Enterprises, Inc., Big Daddy Unlimited, Inc., Blackstock, Inc., Wide Open Enterprises, LLC, We Got Ammo, Inc., Performance Triggers Inc., Anthony McKnight, Sherrie McKnight, Douglas Rios*

## CERTIFICATE OF SERVICE

I certify that, on June 22, 2026 I electronically filed the foregoing with this Court using the CM/ECF system, which will send notification to counsel for all other parties.

/s/ *Michael J. Smith*

Michael J. Smith